J. H. Crozier,
special judge delivered the opinion of the court.
This is an action of ejectment brought by the defendants in error against the plaintiff in error, in the circuit court of Washington county.
The following point is the only one necessary to be considered by this court. On the trial of the cause the plaintiffs in the court below, the heirs of Joseph Hale introduced a record, showing that the land ■ in dispute some years previous to the bringing of the action of ejectment, had been partitioned between their ancestor, Joseph Hale, and the defendant, John Whillock, as tenants in common, and division made to each one of them of his share of the land in severalty, and contended that the defendant was estopped from denying their title to the share of the land which had thus been allotted to their ancestor, and for which their action of ejectment was brought. Upon this part of the case the circuit judge charged the jury “that the record of partition, which has been read in this cause, is conclusive upon the parties in the cause, and in the adjudication of *65 the partition, the title of all the parties of record was adjudicated, and final, and conclusive between parties as to the state and condition of the title between them at the time of partition, and the defendant is not now at liberty to set up any outstanding title which existed before the partition, and which would overreach the plaintiffs’ title; nor could he set up title, except such as he has acquired since the partition.” We think there is error in this charge to the jury. On a petition or bill for the partition of lands between joint tenants or tenants in common, a court of equity will not take jurisdiction of and adjudicate upon conflicting titles. So this court decided in the case of Nicely vs. Boyles, 4th Hump. 177. It is there said “the bill for partition is not a bill to settle title, but a bill to divide that which belongs to tenants in common or joint tenants, among them in sev-eralty, and if the title be disputed, partition will not be made until the dispute is settled in an appropriate form of action. A bill of partition is not this.” If this limit to the jurisdiction of a court of equity in such cases be correct, of which we think no one can doubt, how can it be asserted with any sort of reason, that a party in an action of ejectment, the appropriate form of action in which to contest titles to land, is estopped from setting up his title on account of a final decree between the same parties on a bill for partition, in which the court had no jurisdiction to decide upon conflicting titles? This would be to deprive a party of an asserted right without any hearing. As then,. there never was nor could have been a decision between these parties, of their conflicting titles, in the decree for partition, how can it be said that either of them is estopped thereby from setting up their respective titles in an action of ejectment?
*66 But it is argued in favor of the defendant in error, that a proper construction of our acts of assembty of 1787, 1789 and 1799, upon the subject of partition of lands, is decisive of this case. The act of 1787, ch. 17, sec. 1, authorises the petition for partition between persons claiming “the real estate of any intestate,” and after pointing out the manner in which such petition shall be made, concludes: “and such return and appropriation shall be binding and valid in, among and between the claimants, their heirs and assigns forever.”
The act of 1789, ch. 24, gives to any tenants in common, the same right of having their land partitioned, as is provided in the act of 1787, for dividing the estates of intestates, and concludes thus: “the divisions, when made, shall be good and effectual in law to bind the parties, their heirs and assigns.” The act of 1799, ch. 11, making additional provisions in reference to the partition of estates, between tenants in common, joint tenants, or other claimants of an undivided estate, concludes that the partition made according to its provisions, “shall be forever binding on all and every person or persons, who shall or may have claim or title to any such lands or parts thereof, as tenant in common, joint tenant or tenant in coparcenary or other undivided estate.” In all these acts of assembly, according to our construction, the legislature had no reference whatever to the legal title by grant or deed, by which the real estate was held, but simply to the title in severalty in contradistinction to that which had been held in common, joint tenancy or coparcenary.
It only intended to make the partition effective so far as related to the title in severalty. It only intended to *67 say that the metes and bounds of each share, which had been allotted to each claimant by the decree of partition, should be established and forever binding on all the parties, their heirs and assigns. To make this construction of these different acts more apparent, and, as we think, entirely conclusive, let us look a little farther into their provisions. The act of 1799, provides, in substance, that where any persons hold lands, tenements or hereditaments, as tenants in common, or as joint tenants, or in coparcenary, and desire the same to be partitioned in severalty, they may present their petition for that purpose to any court having jurisdiction thereof, but previous thereto, they must serve a notice of ten days on all concerned, or make publication in some newspaper, printed in the State, six months (altered by the act of 1831, ch. 67, to three months) previous to the time of presenting such petition. It then provides that a petition made in this manner, shall be forever binding on all and every person or persons, who shall or may have claim or title to any such lands. According to the construction of the act of assembly, contended for on behalf of the defendants in error, if a person who had been treated as a tenant in common, in a partition of lands under its provisions, should have a perfect and superior title to all the lands claimed by his co-tenants, but should not happen to see the publication, or have notice of the presentation of the petition for partition, so as to give him an opportunity to present his claim, he would forever be estopped from asserting it. And this would be the case, although the court making the partition would have no jurisdiction to adjudicate upon this title, if presented, but would await a decision between *68 the parties in an action of ejectment. To this reasoning we cannot assent.
We have been thus particular in looking into the acts of assembly upon this subject, upon a point, about which, we entertained no previous doubt, because we have been referred to a case in 2 Dev. and Bat. 433, determined by the supreme court of N. C., which favors the construction of the acts of 1787 and 1789, contended for by the counsel for the defendants in error, in this case.
There are, however, no reasons advanced in the opinion of the court in that case, sufficient to induce us to change the decision in 4 Humphreys 177, or to doubt the true meaning of ou.r acts of assembly upon this subject. The judgment of the circuit court will therefore be reversed.